<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ROSARIO LINDSEY,  Plaintiff, | Civ. No. 03-5762 (GEB) |
| v. | **MEMORANDUM OPINION** |
| CATERPILLAR, INC., *et al.*,  Defendants. |  |

**<u>BROWN, District Judge</u>**

This matter comes before the Court upon Defendant Caterpillar, Inc.'s motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). The motion has been extensively briefed by both Plaintiff and Defendant Caterpillar, and the Court has decided the motion based on the parties' written submissions and without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the motion is granted.

**I.      BACKGROUND**

Plaintiff Rosario Lindsey ("Plaintiff") brought the present diversity action against Defendants Caterpillar, Inc. ("Caterpillar") and Midwestern Manufacturing Company ("Midwestern"). On July 29, 2004, Plaintiff filed an Amended Complaint alleging claims of strict liability, negligence and breach of warranty based on New Jersey law. The claims arise out of an incident that involved Plaintiff's husband, Charles Lindsey ("the decedent"), which ultimately led to his death. On August 5, 2002, the decedent was operating a sideboom pipelayer tractor that was manufactured by Caterpillar, the CAT 572G. (Caterpillar's 56.1 Statement, ¶ 1). This machine was operating in

unison with a second pipelayer manufactured by Midwestern. The machines were traveling one behind the other, in reverse gear, and were attached to the same load by its boom rigging. As the decedent and another worker, Robert Wix, attempted to transport a forty-foot pipe along a slope of approximately twenty degrees, Midwestern's pipelayer lost power and began sliding down the slope. The CAT 572G began to slide as well and eventually flipped over. The decedent suffered fatal injuries. (*Id.*, ¶ 4).

On July 28, 2005, the Court entered a stipulation of dismissal of all claims asserted against Midwestern. Thus, the remaining claims in this action are against Caterpillar. On May 13, 2005, Caterpillar moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Caterpillar contends that Count I of Plaintiff's Amended Complaint is preempted by the Occupational Safety and Health Act ("OSH Act" or "Act"). Caterpillar further asserts that Counts II and III are precluded under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, *et seq*.

**II.    DISCUSSION**

**A.    Summary Judgment Standard**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996); *Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), *cert. denied*, 490 U.S. 1098 (1989); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

A movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the nonmoving party has provided evidence to show that a question of material fact remains. *See Celotex,* 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," *id.* at 322, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

      **B.**      <u>**Preemption Analysis of Count I – Strict Liability**</u>

In Count I of the Amended Complaint, Plaintiff asserts that Caterpillar is strictly liable under the New Jersey Products Liability Act, N.J.S.A. 2A:58C-1, *et seq*. (Pl.'s Am. Compl., ¶ 20). Specifically, Plaintiff asserts that CAT 572G was defectively designed because it was not equipped with a rollover protection system ("ROPS"). (*Id.*, ¶ 16). Caterpillar argues that Plaintiff's strict

3

liability design defect claim is preempted by the OSH Act, and the regulations promulgated by the Occupational Safety and Health Administration ("OSHA") pursuant to the Act.

The preemption doctrine derives from the Supremacy Clause of the Constitution. U.S. CONST. art. VI, cl. 2. "[A]ny state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (quoting *Felder v. Casey*, 487 U.S. 131, 138 (1988)). Whether a federal statute preempts state law is a question of congressional intent. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 299 (1988); *N.J. State Chamber of Commerce v. Hughey*, 774 F.2d 587, 592 (3d Cir. 1985). Regulations promulgated pursuant to federal law have as much pre-emptive effect as federal statutes. *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

A federal statute may explicitly preempt a state statute if "on the face of the federal statute, Congress expressly stated an intent to preempt a state law." *Hughey*, 774 F.2d at 592. Preemption may also be implied in one of two ways. Field preemption occurs when "federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *C.E.R. 1988, Inc. v. Aetna Cas. & Sur. Co.*, 386 F.3d 263, 269 (3d Cir. 2004) (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). Conflict preemption occurs when "compliance with both state and federal law is impossible, or when the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.'" *California v. ARC Am. Corp.*, 490 U.S. 93, 100-101 (1989) (citations and quotations omitted).

In the present case, Caterpillar argues that the OSH Act and OSHA regulations, specifically 29 C.F.R. § 1926.1000 which concerns ROPS for material handling equipment, preempt Plaintiff's strict liability claim. In response, Plaintiff advances three main arguments. First, Plaintiff contends

that the OSH Act does not apply to manufacturers, but only to employers, and therefore cannot preempt her claim against Caterpillar. Second, Plaintiff asserts that the Act was not intended to preempt New Jersey's product liability law. Third, Plaintiff contends that her claim does not conflict with the OHS Act and OSHA regulations. The Court will address each of Plaintiff's arguments in turn.

In a recent decision by the New Jersey Supreme Court, the court addressed the issue whether the OSH Act may preempt tort claims asserted against a manufacturer. In *Gonzalez v. Ideal Tile Importing Co., Inc.*, No. A-53, 2005 WL 1750490 (N.J. July 27, 2005), the plaintiff suffered injuries after he was struck by a forklift at work. He sued the manufacturer of the forklift, asserting tort claims based on its failure to install warning devices that would increase operation safety. The federal regulations concerned the American National Standards for Powered Industrial Trucks which were adopted by the Secretary of Labor as part of OSHA regulations. The New Jersey Supreme Court held that some third-party claims arising in the workplace, including those asserted against manufacturers, may be preempted by the OSH Act. *Id.,* at *1. After engaging in an extensive preemption analysis, the court ultimately concluded that the OSH Act preempted Plaintiff's product liability claim against the forklift manufacturer, based on a conflict preemption theory.

Citing *Schmidt v. Duo-Fast*, No. CIV.A 94-6541, 1995 U.S. Dist. LEXIS 15731 (E.D. Pa. Oct. 25, 1995), a case which applied New Jersey law, Plaintiff argues that "New Jersey has rejected Caterpillar's preemption argument, even in the face of OSHA regulations which explicitly addressed the product defect at issue." (Pl.'s Opp'n at 4). Plaintiff's reading of that case, however, is overly broad. Contrary to Plaintiff's assertion, *Schmidt* does not stand for the proposition that the OSH Act may not preempt state law claims against manufacturers because it only applies to employers.

5

Instead, *Schmidt* addresses the admissibility of the OSH Act as a standard for proving the lack of a design defect. Plaintiff fails to offer additional controlling authority to support her argument. Therefore, in light of the New Jersey Supreme Court's holding in *Gonzalez* that claims against manufacturers may be preempted by the OSH Act, and the absence of controlling case law to the contrary, the Court rejects Plaintiff's argument that the OSH Act may not preempt her claim against Caterpillar because it does not apply to manufacturers.[1]

Second, Plaintiff argues that the OSH Act was not intended to preempt New Jersey's product liability law. The overall purpose of the OSH Act is to "to assure so far as possible every working man and woman in the Nation safe and healthful working conditions and to preserve our human resources. . . ." 29 U.S.C. § 651(b). The preemption language of the OSH Act provides:

> Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any occupational safety or health issue with respect to which no standard is in effect under section 655 of this title.

29 U.S.C. § 667(a). Additionally, the OSH Act's savings clause evinces Congress' intent to spare some state laws and regulations from preemption. The savings clause states:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees under any law with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4). In *Gonzalez*, the New Jersey Supreme Court concluded that the presence of

---

[1] The New Jersey Supreme Court's ruling in *Gonzalez* additionally forecloses Plaintiff's argument that OSHA regulations may only serve as rebuttable evidence of the applicable standard of care imposed upon manufacturers. The court's holding clearly establishes that OSHA regulations may serve as evidence of a preemption defense.

a savings clause, together with the presence of a preemption clause, compelled the conclusion that state tort actions were not expressly preempted by the OSH Act. *Gonzalez*, 2005 WL 1750490 * 3.

Proceeding with its analysis, the *Gonzalez* court addressed field preemption. The court noted that states may develop and enforce its own occupational safety and health standards by submitting a plan and obtaining approval from the Secretary of Labor pursuant to 29 U.S.C. § 667(b). *Gonzalez*, 2005 WL 1750490 * 3; *see also Gade*, 505 U.S. at 97. The statute provides:

> Any State which, at any time, desires to assume responsibility for development and enforcement therein of occupational safety and health standards relating to any occupational safety or health issue with respect to which a Federal standard has been promulgated under section 655 of this title shall submit a State plan for the development of such standards and their enforcement.

29 U.S.C. § 667(b). Based on Congress' intent to allow states to play a role in maintaining the safety and health standards in the workplace, the court concluded that field preemption is inapplicable.

This Court adopts the reasoning set forth by the New Jersey Supreme Court in *Gonzalez*, to support its conclusion that express and field preemption are not present here. Absent express and field preemption, however, state law must nonetheless yield if conflict preemption exists. In addressing Plaintiff's third argument, this Court must closely examine "both the intent of the federal regulation and the purpose of the questioned state regulation" to determine whether conflict preemption applies. *Gonzalez v. Ideal Tile Importing Co., Inc.*, 853 A.2d 298, 309 (N.J. Super. Ct. App. Div. 2004). In *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88 (1992), the United States Supreme Court considered the pre-emptive effect of the OSH Act on state laws. The Court noted:

7

> Looking at the provisions of § 18 as a whole, we conclude that the OSH Act precludes any state regulation of an occupational safety or health issue with respect to which a federal standard has been established, unless a state plan has been submitted and approved pursuant to § 18(b). Our review of the Act persuades us that Congress sought to promote occupational safety and health while at the same time avoiding duplicative, and possibly counterproductive, regulation. It thus established a system of uniform federal occupational health and safety standards, but gave States the option of pre-empting federal regulations by developing their own occupational safety and health programs.

*Gade*, 505 U.S. at 102.[2]

Here, New Jersey has not opted to preempt the federal standard by submitting its own plan. Hence, New Jersey is bound by the federal standards that are in place. Significantly, OSHA regulations expressly do not require the installation of ROPS on sideboom pipelaying tractors. The relevant standard in this case is 29 C.F.R. § 1926.1000 which governs ROPS for material handling equipment. This section provides:

> Rollover protective structures (ROPS) for material handling equipment.
>
> (a)  Coverage.
>
> (1)  This section applies to the following types of material handling equipment: To all rubber-tired, self-propelled scrapers, rubber-tired front-end loaders, rubber-tired dozers, wheel-type agricultural and industrial tractors, crawler tractors, crawler-type loaders, and motor graders, with or without attachments, that are used in construction work. This requirement *does not apply to sideboom pipelaying tractors*.

29 C.F.R. § 1926.1000(a)(1) (emphasis added). Caterpillar argues that this regulation establishes

---

[2] The OSH Act defines an "occupational safety and health standard" as "a standard which requires conditions, or the adoption or use of one or more practices, means, methods, operations, or processes, reasonably necessary or appropriate to provide safe or healthful employment and places of employment." 29 U.S.C. § 652(8).

a federal standard that specifically excludes sideboom pipelayers from a category of material handling equipment requiring ROPS. Caterpillar contends that Plaintiff's design defect claim is predicated on a legal theory that effectively attempts to override this standard by requiring manufacturers of sideboom pipelayers to install ROPS. Plaintiff asserts that her claim is not in conflict with OSHA regulations because the standard set forth in 29 C.F.R. § 1926.1000 does not require nor prohibit ROPS on sideboom pipelayers. Without such a requirement, Plaintiff posits that the regulation fails to establish a federal standard with which her claim may conflict.

The Seventh Circuit addressed a similar issue in *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291 (7th Cir. 1997). *Gracia* involved the standard set forth by the National Highway Transportation Safety Administration ("NHTSA") in the National Traffic and Motor Vehicle Safety Act, specifically FMVSS 212 which "establishes windshield retention requirements for motor vehicles during crashes." *Gracia*, 112 F.3d at 295 (quoting 49 C.F.R. § 571.212.S1). The plaintiff asserted that the manufacturer of a forward control truck weighing over 10,000 pounds was strictly liable because the windshield retention system was "unreasonably dangerous and inadequate to prevent the windshield from ejecting during foreseeable impacts." *Gracia*, 112 F.3d at 293. FMVSS 212, however, did not apply to vehicles with a gross vehicle weight of more than 10,000 pounds, and explicitly excluded forward control vehicles. *Id.* at 295.

The plaintiff argued that there was no preemption because the truck at issue was excluded from the federal standard governing windshield retention requirements. The Seventh Circuit rejected the plaintiff's argument noting that there was indeed an applicable federal standard, specifically one in which the NHTSA decided to exempt the type of truck involved in the suit. *Id.* at 296. The court noted the Supreme Court's holding in *Arkansas Electric Cooperative Corp. v. Arkansas Public*

9

*Service Commission*, 461 U.S. 375, 384 (1983): "a federal decision to forgo regulation in a given area may imply an authoritative federal determination that the area is best left unregulated, and in that event would have as much pre-emptive force as a decision to regulate." *Gracia*, 112 F.3d at 296 (quoting *Ark. Elec. Coop. Corp.*, 461 U.S. at 384). As such, the court determined that the exclusionary language in FMVSS 212 compelled the conclusion that exempting certain vehicles from windshield retention requirements was a conscious decision by the NHTSA. *Gracia*, 112 F.3d at 297. The court found preemption since "[a]llowing a state common law standard on windshield retention would, accordingly, be a standard that is not identical to the federal one." *Id.*

In light of Congress' intent to apply uniform standards in the workplace, and the Seventh Circuit's persuasive reasoning in *Gracia*, this Court concludes that OSHA regulations, particularly 29 C.F.R. § 1926.1000, establishes a federal standard which imposes no requirement upon manufacturers to install a ROPS feature on sideboom pipelayers. Plaintiff's contention that Caterpillar defectively designed the sideboom pipelayer by failing to install ROPS would effectively subject a manufacturer to a standard that is in direct conflict to the federal standard established by the OSH Act and OSHA regulations. Therefore, Plaintiff's claim is preempted.[3] Consequently, the Court grants summary judgment in favor of Caterpillar.

---

[3] Plaintiff further argues that there can be no preemption because such a finding would leave injured parties without legal remedy since the OSH Act does not create a private right of action. Whether or not this is the case, this Court's analysis is bound by the controlling principles concerning preemption. Plaintiff fails to cite authority that would require this Court to conclude that preemption does not exist because Plaintiff may be without recourse as a result. Thus, the Court finds Plaintiff's argument unpersuasive.

**C.     Counts II and III – Negligence and Breach of Warranty**

Caterpillar argues that Plaintiff's negligence and breach of warranty claims are subsumed by the New Jersey Products Liability Act, and thus are precluded as a matter of law. Plaintiff agrees with this contention. Accordingly, these claims against Caterpillar are dismissed.

**III.     CONCLUSION**

For the foregoing reasons, Caterpillar's motion for summary judgment is granted, and all claims against Caterpillar are dismissed. An appropriate form of order accompanies this Memorandum Opinion.

Dated:          August 9, 2005

                                                                   s/ Garrett E. Brown, Jr.
                                                              GARRETT E. BROWN, JR., U.S.D.J.