NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

ROSARIO LINDSEY,                                 :

    Plaintiff,                                         :    Civ. No. 03-5762 (GEB)
    v.
                                                                :    **MEMORANDUM OPINION**
CATERPILLAR, INC.,
                                                                :
    Defendant.
_____

**BROWN, Chief Judge**

    This matter comes before the Court upon the motion in limine of Caterpillar Inc. ("Caterpillar" or "Defendant") to preclude the testimony of Plaintiff Rosario Lindsey's ("Plaintiff") expert witness, Paul R. Stephens. The Court has reviewed the parties' submissions and has decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court will deny Defendant's motion.

**BACKGROUND**

    This case arises out a fatal workplace accident that claimed the life of Mr. Charles Lindsey ("Lindsey"). (Def. Mot. at 1; Pl. Opp'n at 1.) On August 5, 2002, Mr. Lindsey was crushed to death when the tractor he was operating rolled over onto him. (Def. Mot. at 1; Pl. Opp'n at 1.) At the time of the accident, Mr. Lindsey was riding a Caterpillar 572G sideboom pipelayer manufactured by Caterpillar in 1981, and was not wearing a seat belt. (Def. Mot. at 2; Pl. Opp'n at 1.) The tractor at issue was not equipped with a roll over protection structure ("ROPS") or an operator protective structure ("OPS"). (Def. Mot. at 2; Pl. Opp'n at 1.)

    Plaintiff, acting as executrix of Mr. Lindsey's estate, brought this action against

Caterpillar, alleging strict liability, negligence and breach of warranty. *See* Am. Compl. In support of her claims, Plaintiff identified Paul R. Stephens ("Stephens") as an expert. *See* June 22, 2005 Pretrial Order. On July 19, 2005, Caterpillar filed a motion in limine aimed at precluding Mr. Stephens from testifying.

**DISCUSSION**

    A.    **STANDARD**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that:

> [i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

FED. R. EVID. 702. This Circuit has interpreted this rule to require: (1) that the expert be qualified to render and opinion on the subject, (2) that the "expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation,'" and (3) that there be a "connection between the scientific research or test result to be presented and particular disputed factual issues in the case." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742-43 (3d Cir. 1994), *quoting Daubert v. Merrell Dow Pharma.*, 113 U.S. 2786, 2794-96 (1993), *cert. denied*, 513 U.S. 1190 (Feb. 27, 1995) (No. 94-1070), *United States v. Downing,* 753 F.2d 1224, 1237 (3d Cir. 1985).

    B.    **APPLICATION**

Defendant contends that Mr. Stephens should be precluded from testifying in this matter

on the grounds that he lacks the qualifications to be considered an expert under *Daubert,* and that his expert opinion is not properly grounded in the "methods and procedures of science" and is therefore not reliable. Each of these contentions will be addressed in turn.

            i.        Qualification

Expert "[q]ualification under Rule 702 requires that the witness possess the requisite 'knowledge, skill, experience, training or education' with regard to the subject matter of the testimony for which he or she is offered." *Thomas & Betts Corp. v. Richards Mfg. Co.*, No. 01-4677, 2006 U.S. Dist. LEXIS 16636, at *27-28 (D.N.J. April 3, 2006), *citing* FED. R. EVID. 702. "The Third Circuit has interpreted the 'qualification' requirement liberally and has held that 'a broad range of knowledge, skills, and training qualify an expert as such.'" *Thomas*, at *28, *quoting Paoli*, at 741. "While liberal in qualifying experts, the Third Circuit has 'also set a floor with respect to an expert witness's qualifications.'" *Thomas*, at *28, *citing Elcock v. Kmart Corp.*, 233 F.3d 734, 742 (3d Cir. 2000). Indeed, "to be qualified as an expert witness under Rule 702, the witness must demonstrate, through his or her knowledge, skills, training, or education, specialized knowledge that will assist the trier of fact determine a fact in issue." *Thomas*, at *29-30.

Defendant contends that "[e]ven a cursory review of [Mr. Stephens'] qualifications reveals that he lacks the requisite expertise to render opinions relative to the design of ROPS or OPS, construction or testing of ROPS or OPS, or industry customs." Def. Br. at 12. Indeed, Defendant argues that "Stephens has never designed or tested ROPS or OPS for heavy equipment in any capacity . . . has never been a licensed or certified sideboom tractor operator" and has never operated a sideboom tractor. *Id.* Moreover, Defendant submits that Mr. Stephens is not

3

qualified to testify as to customs or practices in the industry as he has not operated heavy equipment since the 1960s, and only has a "fuzzy" recollection of that time period. *Id.* at 12-13.

      Plaintiff, however, responds that Mr. Stephens has "[o]ver twenty-five years of experience in the heavy machinery industry," has over seventeen years' experience as a forensic engineer, was familiar with the processes used by his former employer in designing ROPS and OPS in sideboom tractors, and has personal experience operating heavy machinery, including a sideboom. Pl. Opp'n at 7. Plaintiff adds that Mr. Stephens spent seven years at Allis Chalmers, Inc. "[d]iagnos[ing] and determin[ing] safe remedial procedures for mechanical and electrical problems on an active population of hundreds of wheel loader products," "[p]articipat[ing] in product design and maintainability reviews," and "conduct[ing] stability tests to evaluate tip over potential." Certification of Neil E. Durkin ("Durkin Cert."), Ex. A at 2. Moreover, Mr. Stephens represents that while at Fiat Allis North America, Inc., he spent eight years "[c]oordinat[ing] safety and product improvement retrofit programs with dealers," "[i]nspect[ing] products for safety related defects," and "supervis[ing] and assist[ing] in the diagnosis and repair of products." *Id.* at 1.

      This case hinges on an engineering issue in which the expert's testimony properly rests on personal knowledge or experience rather than on scientific foundations. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 151 (1999). As explained by Plaintiff, Mr. Stephens has significant experience relating to the issue in this matter, sufficient under the liberal interpretation of the qualification requirement adopted by this Circuit. *See Calhoun v. Yamaha Motor Corp., U.S.A.* 350 F.3d 316 (3d Cir. 2003) (court "interpret[ing] this requirement liberally," and holding that "a broad range of knowledge, skills, and training qualify an expert as

such."), *quoting In re Paoli*, 35 F.3d at 741.   The Court therefore deems that Mr. Stephens is qualified as an expert under Rule 702.

      ii.  Reliability

  In assessing the reliability requirement of Rule 702, the Third Circuit adhered to the framework set out in *Daubert* and ruled that factors that could be considered included:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Milanowicz v. Raymond Corp.*, 148 F. Supp. 2d 525, 531 (3d Cir. 2001), *quoting Paoli*, 35 F.3d at 742 n.8.  There can be little dispute that the *Daubert* and *Kumho* analyses apply to the case at bar.  Indeed, "Daubert's general holding . . . applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized knowledge'" – such as knowledge of engineering.  *Kumho Tire*, 526 U.S. at 141.

  Whether the factors specifically enumerated by the Third Circuit in *Paoli* apply to a case involving specialized knowledge of engineering, however, will depend on the nature of the case.  Indeed, "the test of reliability is 'flexible,' and *Daubert'*s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho*, at 142; *see also id.* at 151 ("Engineering testimony [may] rests upon scientific foundations, the reliability of which will be at issue in some cases. . . . [But i]n other cases[, however], the relevant reliability concerns may focus upon personal knowledge or experience.").

Defendant contends that Mr. Stephen's opinions are not "reliable" as defined under the case law. Def. Br. at 13. First, Plaintiff submits to the Court that Stephens did not provide any methodology to support his opinions. *Id.* at 15. Defendant alleges that Mr. Stephens conceded that there were no OSHA regulations or SAE standards that recommend the installation of OPS on sideboom pipelayers, and failed to suggest that any professional organization or consumer group had ever suggested that ROPS or OPS should be required equipment on sideboom pipelayers. *Id.* at 15. Defendant maintains that none of the literature upon which Mr. Stephens relies support his position, as "none of these sources actually discuss pipelayers or OPS design and construction for pipelayers." *Id.* at 16.

Defendant also suggests that "Stephens is . . . unaware of any 'industry practice' to use OPS on sideboom tractors, and he could only identify a single manufacturer . . . which included what it termed was an 'OPS' in its line of sideboom pipelayers." *Id.* at 17. Defendant adds that "Stephens does not point to a single study or provide any testing data or reports . . . showing that the Allis-Chalmers 'OPS' would have actually withstood the force and energy of a rollover accident," and does not identify a single other manufacturer who installed and tested OPS on sideboom pipelayers. *Id.* at 17-18. Defendant further alleges that Mr. Stephens' expert report is unreliable because he "failed to demonstrate the feasability of his alternative designs," and "did not test or actually design his theory." *Id.* at 19, 22. Defendant concludes that "Stephens cannot testify with a reasonable degree of engineering certainty that his alternative designs would have prevented Mr. Lindsey's death." *Id.* at 30.

Plaintiff, on the other hand, contends that Mr. Stephens has satisfied the *Daubert* standard. Pl. Opp'n at 9. Indeed, Plaintiff submits that, unlike in *Milanowicz v. Raymond Corp.*,

148 F. Supp. 2d 525 (D.N.J. 2001), Mr. Stephens in this case specifically addressed OSHA standards regulating the need for ROPS or OPS on sideboom pipelayers, if only to note that there were no such regulations in force.  Plaintiff also insists that Mr. Stephens relied on significant industry literature in reaching his opinion, and that no judicial precedent requires said literature to have been peer-reviewed.  Pl. Opp'n at 10.

In addition, Plaintiff claims that Mr. Stephens properly demonstrated industry practice by "identifying sideboom pipelayers that incorporate ROPS or OPS, including Fiat-Allis Sideboom Tractors and International Harvester and Liebherr sideboom tractors." *Id.* at 11.  Plaintiff also alleges that while Mr. Stephens did not test his models, he did provide to Defendants and the Court "illustrations of both a sideboom pipelayer without ROPS or OPS and a similar machine featuring ROPS to illustrate the feasability of his design," and relied on extensive calculations of the effectiveness of the ROPS and frame components he suggests – all of which support the feasability of his alternative design. *Id.* at 11-12.  Plaintiff notes that Defendant itself has failed to test the performance of "roll-over protection for sideboom pipelayers because of the difficulty of replicating a rollover." *Id.*

Having reviewed all the parties' submissions and Mr. Stephens' report, the Court finds that Mr. Stephens' expert testimony is admissible under the flexible reliability standard adopted by this Circuit in applying Federal Rule of Civil Procedure 702.  Defendant cites to *Oddi v. Ford*, 234 F.3d 136 (3d Cir. 2000), *cert. denied*, 532 U.S. 921 (March 19, 2001) (No. 00-1129) in support of its argument that Mr. Stephens' expert report fails to meet the requirements of Rule 702.  That case arose out of a near-fatal accident involving a truck that collided with a guardrail.  The *Oddi* court found that the proposed expert's testimony was not sufficiently reliable under

Rule 702 on the grounds that the expert (i) was shown not to have familiarity nor to have studied the type of vehicle at issue in that case, (ii) acknowledged that he had not considered the role played by the design of the guardrail, focusing instead on the design of the truck, and (iii) did not perform any testing to determine whether thicker sheets of metal on the truck would have been less prone to crumpling. *Id.* at 155-57.

The case at bar, however, is readily distinguishable from *Oddi*. First, it is undeniable that Mr. Stephens is familiar (through his years of work as a construction tractor testing engineer, *inter alia*) with sideboom pipelayers. Second, the nature of the question to be resolved by the expert – whether or not ROPS or OPS would prevent the type of accident incurred by Mr. Lindsey – does not lend itself to extensive testing, thus preventing Mr. Stephens from assessing the feasability of his alternative design. Indeed, the bulk of the sideboom pipelayer, the cost of implementation of Mr. Stephens' proposed designs and the inherent danger involved in replicating the circumstances that led to Mr. Lindsey's untimely death all lead this Court to conclude that Mr. Stephens can be excused for not having tested his hypothesis fully (in *Oddi*, by contrast, the expert was simply required to perform crumpling tests on individual sheets of metal). Third, Mr. Stephens did not have to consider outside variables (such as the design of the guardrail in *Oddi*) which might have had an impact on the behavior of the sideboom pipelayer under the circumstances that lead to Mr. Lindsey's death.

Mr. Stephens cannot be faulted, as in *Milanowicz*, for his failure to discuss at length the regulatory standards governing such matters – as explained in his expert report, there are no such standards in effect at this time. Mr. Stephens has also offered evidence of his knowledge of industry practice, by demonstrating that other sideboom pipelayers in the industry have OPS or

ROPS. Indeed, Mr. Stephens indicates that brands such as Allis-Chalmers and Liebherr featured ROPS for sideboom pipelaying vehicles, whereas "[e]ven new untis depicted on Caterpillar's website do not feature ROPS." Durkin Cert. Ex. B, at 4. In addition, he testified that he was familiar with sideboom tractors as a result of his time with the engineering test department of Allis Chalmers, during he which he tested and operated such construction machinery. *Id.* at 7. Such evidence alone, in fact, may make up for his alleged failure to test his hypothesis. *Milanowicz*, at 533 ("In alternative design cases, evidence of industry practice may help negate criticism based on lack of testing."). Accordingly, the Court finds that Mr. Stephens' expert testimony is "reliable" and admissible under Rule 702. To the extent Mr. Stephens level of experience or lack of testing calls into question the reliability of his testimony, such lacunae are best addressed at trial, under cross-examination.[1]

---

[1] Defendant further contends that Mr. Stephens' report should be excluded under the net opinion rule. That rule holds "that an expert's bare conclusions, unsupported by factual evidence, are inadmissible. The rule frequently focuses on the failure of the expert to explain a causal connection between the act complained of and the injury allegedly resulting therefrom." *May v. Atlantic City Hilton*, 128 F. Supp. 2d 195, 198 (D.N.J. 2000).

The Court finds that Mr. Stephens' report adequately draws a causal connection between the lack of OPS or ROPS on the sideboom tractor operated by Mr. Lindsey, and the fatal injuries he sustained. Moreover, the Court reads Mr. Stephens' report to stand for the proposition that his understanding of industry practice leads him to the conclusion that Mr. Lindsey would have worn a seat belt had his tractor been equipped with OPS or ROPS. Such an assumption does not call into question the net opinion rule as it appears properly grounded in Mr. Stephens' significant experience of the industry and its practices.

**CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's motion in limine. An appropriate form of Order accompanies this Opinion.

Dated: June 20, 2007

  s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.
